UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KEITH L. HINDMAN, and<br>STEVEN M. FEATHERKILE,<br><br>Defendants. | NOS.  CR-07-096-RHW-1<br>          CR-07-096-RHW-2<br><br>**ORDER DENYING MOTIONS TO DISMISS, SUPPRESS** |

A pretrial conference was held on July 22, 2008. Defendant Keith Hindman was present and represented by Mark Vovos; Defendant Steven M. Featherkile was present and represented by J. Jarrette Sandlin. The Government was represented by Assistant United States Attorney Joseph Harrington. Before the Court are Defendant Keith Hindman's Motion *in Limine* (Ct. Rec. 60), Motion for Suppression of Evidence Pursuant to Rule 12 (Ct. Rec. 61), and Motion to Dismiss Case (Ct. Rec. 66). Defendant Steven Featherkile filed a notice to join in his co-Defendant's motions (Ct. Rec. 71).

**I.    Motion to Suppress**

Defendant moves the Court for an order excluding evidence and statements on the grounds that they were obtained as a result of an illegal search and seizure. Defendant submits the search warrant affidavit in this matter did not establish probable cause to search.

**A.    Facts**

Defendant Hindman is a doctor of osteopathic medicine who operated the

**ORDER DENYING MOTIONS TO DISMISS, SUPPRESS * 1**

Shepherd's Staff Foundation Medical Clinic in Deer Park, Washington. Among other things, Dr. Hindman treats patients for pain management. He is licensed in the State of Washington and registered with the Drug Enforcement Agency for the purpose of prescribing prescription medications. Defendant Featherkile is a licensed physician assistant supervised by Dr. Hindman.

The FBI began an investigation in January 2005 in conjunction with other federal and state agencies. The investigation concentrated on two general areas: whether Defendants have caused false or unsubstantiated claims for reimbursement of Schedule II controlled substances to be submitted to government and private insurance companies in violation of 18 U.S.C. § 1347; and whether Defendants issued prescriptions for Schedule II controlled substances, such as Methadone, OxyContin, and Oxycodone, without a legitimate medical purpose and/or outside the normal course of medical practice, in violation of 21 U.S.C. § 841.

Based on interviews of patients and cooperating witnesses and on the insurance investigation, the FBI sought search warrants for both of the premises of Shepherd's Staff Foundation Medical Clinic as well as for Dr. Hindman's residence and his storage unit. Defendant submits that while entering the premises at 855 S. Main, the FBI made another application for a search warrant for the adjoining premises at 857 S. Main. Defendant states that nothing was seized from the storage unit.

The items sought in the warrant included patient records including patients not suspected to be included in any of the alleged crimes being investigated, as well as computer data. The warrant was executed on September 22, 2005. The warrant requested the seizure of 270 selected patient files.

**B.  Analysis**

Defendant submits this was an over-broad and unnecessary request without probable cause as to the specific patients requested. Defendant also argues that the information that the FBI had from confidential cooperating witnesses was stale,

**ORDER DENYING MOTIONS TO DISMISS, SUPPRESS \* 2**

and there was no nexus to the location of the crime or to the specific patients. For these reasons, Defendant states the evidence seized should be suppressed.

The Government responds that the affidavits were not lacking a nexus to an articulated crime, but that the affidavits instead described the investigation and the potential violations of law being investigated. The affidavit also explains that Defendant is a contractual medical provider for state and federal benefits programs and that there was evidence that he changed charts in preparation for a Medicare audit and an L&I request for charts in 2004 and 2005. There is also evidence in the affidavit that Defendant illegally billed prescriptions in relation to the "Celebrate Recovery" program he offered on Sunday evenings for recovering addicts.

As to the allegation of overbreadth, the Government submits the affidavits identified specific patient files that represented a sampling of claims submitted to the identified benefits programs along with patients who exhibited high doses of pain medications. The Government submits there was probable cause to search for the items listed in the warrants, and that the warrant objectively described the items to be searched and seized with specificity and sufficiently restricted the discretion of the agents executing the search.

As to the staleness claim, the Government maintains the affidavits were based on information obtained from 2002 to April 2005 and that the information was not stale.

Last, the Government states that, should the Court determine the search warrants in this case were not valid, the evidence should still be admitted pursuant to the good faith exception outlined in *United States v. Leon*, 468 U.S. 897 (1984). The Government states that the affiant did not mislead the magistrate; the magistrate did not wholly abandon her judicial function; the affidavit contained substantial evidence toward a finding of probable cause; and the warrant was not facially deficient.

    **1.**    **Probable Cause**

**ORDER DENYING MOTIONS TO DISMISS, SUPPRESS \* 3**

A warrant may not issue absent a showing of probable cause to believe that the legitimate object of a search is located in a particular place. *See United States v. Adjani*, 452 F.3d 1140, 1145 (9th Cir. 2006). Here, Defendant argues there was not probable cause as to the specific patients identified in the warrant affidavit and that the warrants were overbroad. The affidavit outlines the evidence that shows that Defendant was the top prescriber of medication in Washington and the second highest prescriber of Oxycodone. It includes information from a pharmacist about his unusual prescribing habits along with information from several witnesses stating that Defendants prescribed excessive amounts of drugs.

Defendant argues that the affidavit contains only conclusory statements and mere suspicions of people not educated in pain management, and that this cannot form the basis of probable cause. However, the "probable cause standard . . . is a practical, nontechnical conception. [It] is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Id.* (internal quotation marks and citations omitted). From the extensive information contained in the affidavit from various sources, the Court finds the affidavit does establish probable cause to search the locations identified for evidence of the enumerated crimes of health care fraud and distribution of controlled substances.

### 2.   Particularity

The Fourth Amendment contains a specificity requirement which is meant to prevent officers "from engaging in general, exploratory searches by limiting their discretion and providing specific guidance as to what can and cannot be searched and seized." *Adjani*, 452 F.3d at 1147. "[T]he level of detail necessary in a warrant is related to the particular circumstances and the nature of the evidence sought." *Id.* When determining whether a warrant is sufficiently particular, the Court should consider the following factors:

> (1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective

**ORDER DENYING MOTIONS TO DISMISS, SUPPRESS \* 4**

standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.

*Id.* at 1148.

Here, the warrants provided the identity and nature of the items to be seized and limited the search to evidence of the specific, identified crimes. Additionally, the lengthy statement of probable cause detailed the alleged crime and Defendants' alleged unlawful conduct, and this acted to further limit the officers' discretion. The warrant also set out objective standards by which officers could differentiate items to be seized; in fact, the warrant identified specifically the patient files subject to seizure. The Government described the items to be searched and seized with particularity given the nature of the crime and the evidence it possessed at that time.

### 3. Staleness

A warrant is not supported by probable cause if it is based on stale information that renders unlikely the continued existence of seizable materials in the place to be searched. No set time limit renders information stale. "Staleness must be evaluated in light of the particular facts of the case and the nature of the criminal activity and property sought." *United States v. Greany*, 929 F.2d 523, 525 (9th Cir. 1991).

Evidence that is sustained and perpetuated over a period of time can defeat the claim of "staleness." *United States v. Bucuvalas*, 970 F.2d 937 (1st Cir. 1992) (finding that evidence gathered over a period of nearly four years was not stale). *See also United States v. Lacy*, 119 F.3d 742, 745-46 (9th Cir. 1997) ("The information offered in support of the application for a search warrant is not stale if 'there is sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still on the premises.'").

Medical records fall under the exception for evidence that is perpetuated over a period of time. Additionally, the Court finds that the time the Government

**ORDER DENYING MOTIONS TO DISMISS, SUPPRESS \* 5**

spent gathering the information was not overly long, nor was the information out of date.

The Court therefore denies Defendant's motion to suppress, for the search warrant affidavit adequately established probable cause to search the premises, including the location added to the warrant after the initial search was executed.

## II.    Motion to Dismiss

Also before the Court is Defendant's Motion for an Order (1) Declaring 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846 Unconstitutional for Vagueness; and (2) Dismissing Counts 1-14 for Failure to State an Indictable Offense (Ct. Rec. 66).  In this motion, Defendant argues that the charges under 21 U.S.C. § 841 should be dismissed  because it is not illegal for a licensed physician to dispense pain medications.  He states that § 841(a)(1) is unconstitutionally vague both facially and "as applied" to Defendant.  Defendant argues that a physician looking at the statute would not be able to determine what actions are not for a legitimate medical purpose and/or outside the scope of professional practice.

The Government responds that § 841 is part of a comprehensive act that has been consistently upheld against constitutional attack.  *See United States v. Visman*, 919 F.2d 1390, 1393 (9th Cir. 1990), *cert. denied* 423 U.S. 1031 (1991).  In fact, the Supreme Court affirmed the conviction of a licensed physician under § 841(a)(1) in *United States v. Moore*, 423 U.S. 122, 142 (1975).  The Ninth Circuit has likewise examined the phrase "outside the scope of professional practice" as used in § 841(a)(1) and found no constitutional infirmity.  *United States v. Rosenberg*, 515 F.2d 190, 197 (9th Cir. 1975).

Considering the consistent upholding of this statute by the courts, the Government submits Defendant's motion should be denied.  Additionally, whether Defendant's conduct falls outside the bounds of professional conduct is a question for the jury to decide under *Rosenberg*.  515 F.2d at 199.

In his reply, Defendant Hindman appears to concede that § 841 is

**ORDER DENYING MOTIONS TO DISMISS, SUPPRESS \* 6**

constitutionally applied to licensed physicians, but he argues that good faith is essential and relevant to a physician's violation of § 841. He complains that the lack of good faith is not alleged in the Indictment, nor is it in any memoranda, discovery, or other facts provided by the prosecution. Hindman cites to *United States v. Hayes*, 794 F.2d 1348 (9th Cir. 1986), in which the Ninth Circuit found no error in the jury charge that required them to determine that the physical act of prescribing was other than in good faith, and that defined good faith as "an honest effort to prescribe for a patient's condition in accordance with the standard of medical practice generally recognized and accepted in the country." *Id.* at 1351.

      This argument is best considered in the light of jury instructions, and it does not apply to the question of whether § 841 is constitutional. As to the application of this argument to Defendant's motion to dismiss for failure to state an indictable offense, the Ninth Circuit has not addressed this specific argument, but the Fourth Circuit has in *United States v. Daniel*, 3 F.3d 775, 777-78 (4th Cir. 1993). That court interpreted the statute's elements as (1) a knowing or intentional attempt to distribute or dispense (2) a substance known to be controlled (3) in a way not authorized by this subchapter. *Id.* at 778. The "lack of good faith" requirement falls under the third element, and with respect to physicians that element requires proof that the charged conduct falls outside the boundaries of the registrant's professional practice. *Id.* Here, the Indictment's allegations that the distributions were prescribed "for other than legitimate medical purposes and outside the course of professional practice" satisfy that element. *See id.*

      Defendant Featherkile also filed a reply to this motion in which he raises a novel argument using the reasoning applied in *Gonzales v. Oregon*, 546 U.S. 243 (2006). Featherkile argues that to indict a physician under § 841, the federal government must have the power to supersede state medical standards of care for practicing physicians and physician assistants. Featherkile submits that the Supreme Court's holding in *Gonzales* shows that the federal government does not

**ORDER DENYING MOTIONS TO DISMISS, SUPPRESS \* 7**

have that power, so the Indictment must be dismissed. The Government relies, as stated above, on the Supreme Court's decision in *Moore*, 423 U.S. at 135, to argue that the federal government does have the power to regulate physicians' prescriptions of certain scheduled drugs.

     *Gonzales v. Oregon* settled a declaratory claim brought by the State of Oregon regarding the federal government's enforcement or application of the United States Attorney General's interpretive rule indicating that physicians who assist the suicide of terminally-ill patients pursuant to the Oregon Death with Dignity Act would violate the federal Controlled Substances Act (CSA). 546 U.S. 243, 248-249 (2006). The interpretive rule stated that "using controlled substances to assist suicide is not a legitimate medical practice and that dispensing or prescribing them for this purpose is unlawful under the CSA." *Id.* at 249. The Supreme Court was asked to decide whether the interpretive rule, which basically was an "attempt to define standards of medical practice[,]" was a legitimate exercise of the Attorney General's powers. *Id.* at 259. The Court ultimately concluded that it was not. *Id.* at 274-75 ("[W]e conclude the CSA's prescription requirement does not authorize the Attorney General to bar dispensing controlled substances for assisted suicide in the face of a state medical regime permitting such conduct.").

     Notably, the Supreme Court in *Gonzales* discusses its holding in *Moore* and does not disturb its conclusion that § 841 legitimately "bars doctors from peddling to patients who crave the drugs for . . . prohibited uses." *Id.* at 274 (citing *Moore*, 423 U.S. at 135). The Ninth Circuit and other courts have also upheld the application of the CSA to physicians since the *Gonzales* opinion was issued. *See, e.g.*, *United States v. Feingold*, 454 F.3d 1001, 1011 & n.2 (9th Cir. 2006); *United States v. Hurwitz*, 459 F.3d 463, 476-82 (4th Cir. 2006). Featherkile's arguments regarding the CSA's application to practitioners who treat patients suffering from chronic pain and the standard of care that may apply to those practitioners do not

**ORDER DENYING MOTIONS TO DISMISS, SUPPRESS \* 8**

go to the constitutionality or sufficiency of the Indictment. Rather, they are arguments that apply when composing jury instructions and when arguing before the jury itself. Therefore, the Court denies Defendant's motion to dismiss.

**III.   Motion *in Limine***

Defendant has also filed a motion *in limine* (Ct. Rec. 60). Defendant asks the Court to exclude evidence in thirty categories, many of which are covered by the Federal Rules of Evidence. The Court denies this motion at this time, and gives Defendant leave to renew the motion closer in time to the trial.

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendant Keith Hindman's Motion *in Limine* (Ct. Rec. 60) is **DENIED with leave to renew**.

2. Defendant Hindman's Motion for Suppression of Evidence Pursuant to Rule 12 (Ct. Rec. 61) is **DENIED**.

3. Defendant Hindman's Motion to Dismiss Case (Ct. Rec. 66) is **DENIED**.

4. Defendant Steven Featherkile's notice to join in his co-Defendant's motions (Ct. Rec. 71) is **GRANTED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and to provide copies to counsel.

**DATED** this 25th day of July, 2008.

*S/ Robert H. Whaley*

ROBERT H. WHALEY
Chief United States District Judge

Q:\CRIMINAL\2007\07-096 (Hindman, Featherkile)\deny.dismiss.ord.wpd

**ORDER DENYING MOTIONS TO DISMISS, SUPPRESS \* 9**